See also, 50 B.R. 415.

**In re FIRST FEDERAL CORPORATION,
Debtor.**

**Bankruptcy No. 85–141.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

June 3, 1985.

Albert Gordon, Tampa, Fla., for debtor.

Edward P. Nolde, Asst. Atty. Gen., Richmond, Va., for Commonwealth of Va.

ORDER ON MOTION TO DISMISS

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is a Motion to Dismiss the entire case, filed by the Commonwealth of Virginia (Commonwealth). The Commonwealth seeks a dismissal on the ground that the Chapter 11 case, if permitted to stand, would produce a diminishment

of the Debtor's estate because of continued losses if the Debtor is permitted to remain in control of the affairs of the Debtor. This part of the Motion is based on the factual allegations that: (1) the Debtor's current and projected cash flow is negative and (2) the president of the Debtor misappropriated or embezzled funds of the Debtor and may continue to do so unless the case is dismissed. As additional grounds for dismissal, the Commonwealth urges that this Debtor has no reasonable likelihood to achieve rehabilitation, therefore, a dismissal is warranted pursuant to § 1112(b)(3) of the Bankruptcy Code.

At the Final Evidentiary Hearing, this Court having received testimony and having considered the record now finds and concludes as follows:

First Federal Corporation of Delaware (FFC of Del.) is a corporation formed by Mr. John R. Swaim sometime in 1982. Mr. Swaim was and still is the sole executive in charge of the affairs of this Debtor. He also serves as its president. The initial business undertaking of the Debtor was the acquisition of an office building located in Pinellas County, Florida. The office building is encumbered by a mortgage in favor of Federal Savings and Loan Insurance Corporation (FSLIC). This mortgage is in default representing an outstanding indebtedness in the principal amount of $2,191,609.16, together with unpaid interest up to and including January 18, 1985 in the amount of $754,506.71 and advances for taxes and insurance in the amount of $10,617.00 or a total debt secured by a mortgage of $2,956,732.87.

In addition to owning and operating this facility, the Debtor also launched a travel related business venture whereby it sold to the public travel packages. Each package was sold for $1,500, which entitled the purchaser to use one round trip or two individual trips each for 10 years on any route serviced by Air Florida. The package was sold in turn to the airline for $1,000, thus the Debtor was to realize a gross profit from each sale of $500.00. While some sales may have been for cash, a substantial number of sales were financed by the Debtor itself who charged the purchasers an annual interest rate of 12.8%. The balance of the purchase price was payable in monthly installments over a five year period of time.

It appears that the Debtor pledged at least part of its receivables to the National Bank of Washington, where the Debtor maintained its general corporate account, a collection account and also an escrow account in which monies collected on the installment business contracts were supposed to be deposited. The Debtor sold more than 3,000 of these travel packages to individuals generating a gross income in excess of $4,000,000.

Upon learning the financial difficulties of Air Florida, which ultimately landed Air Florida in the Bankruptcy Court, the funds on deposit in the Washington Bank were frozen by the Bank. The Bank also exercised its right of set-off and paid itself all funds advanced to the Debtor. It appears that the Bank no longer claims any of the funds which it deposited in the registry of the Court, having filed an inter-pleader.

It is without dispute that Air Florida is no longer in the airline business because, as part of a plan of reorganization, confirmed by the Bankruptcy Court, it was absorbed by Midway Express. Furthermore, there are no airlines today in the United States which currently service all the routes previously serviced by Air Florida.

The Debtor no longer maintains a sales office; it no longer sells air travel packages; it has not contracted with any airlines who would be willing to honor any of the coupons already sold; and, for obvious reasons, none of the purchasers of the travel packages who financed the purchase are making any payments under the installment contracts. Thus, while the Debtor claims to have made some minimal profit in the first year of its operation, it has admittedly lost money ever since.

On March 14, 1985 the FSLIC filed a Motion and sought relief from the automatic stay in order to enforce its mortgage lien

against the office building owned by the Debtor. It is without doubt that the Debtor has no income whatsoever at this time from operating the office complex. In light of the fact that this Court already granted the Motion filed by the FSLIC and lifted the automatic stay, it is very unlikely that it will be able to salvage the office building.

It further appears that Mr. Swaim, the President of the Debtor, was indicted by the Federal Government and he was tried and found guilty in a United States District Court in Mississippi. This conviction was affirmed by the Fifth Circuit Court of Appeals. In light of the foregoing, it is inevitable that Mr. Swaim shortly will have to commence to serve his sentence imposed on him in a District Court and will be incarcerated for at least 3 or a maximum of 5 years. While Mr. Swaim indicated that he arranged for a suitable substitute in his forced absence who will be able to run the affairs of the Debtor, it appears that his choice is far from satisfactory. The person selected by him does not have any bankruptcy background; and does not appear to have the know-how to guide this Debtor through a difficult and complex reorganization process or the ability to handle the other difficult tasks facing the seriously troubled Debtor.

Based on the foregoing, the Commonwealth urges that this record is more than sufficient to warrant the finding that its Motion should be granted and this case should be either dismissed or converted to a Chapter 7 liquidation case.

In opposition of the Motion, counsel for the Debtor urged that while it is true that the current status of the Debtor may warrant a conversion, it should be given a reasonable opportunity to attempt to negotiate a contract with a major airline who would be willing and able to honor the travel packages previously sold by the Debtor and since funds on deposit are sufficient and theoretically could be used to make refunds to those who do not desire to go with the program, the conversion at this time would be premature. The allegation of the Commonwealth that assets of the estate are diminishing and that the estate suffers continuing losses have not been established by this record. Notwithstanding, this Court is satisfied that this Debtor's ability to achieve an effective reorganization under Chapter 11 is more than problematic if not totally non-existent. As noted, this Debtor no longer maintains any operating force; it no longer sells anything, and lacks viable means to reorganize its affairs and resume the operation of any business in the conventional sense. It is about to lose one of its major assets, the office building. There is no doubt it has no realistic prospect to resuscitate the travel package program and to negotiate a contract with a major airline who would be willing to participate in the future of the travel package program. Based on the foregoing, the Motion should be granted pursuant to § 1112(b)(2). Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion to Convert be and the same is hereby granted and the above captioned case is hereby converted to a Chapter 7 liquidation case and a separate Order of Conversion shall be entered in accordance with the foregoing.